## 70124. SIMMONS v. THE STATE.
### (331 SE2d 923)

CARLEY, Judge.

Appellant was tried before a jury and convicted of four counts of armed robbery. His motion for new trial was denied and he appeals.

1. Two counts of the indictment were predicated upon allegations that money belonging to the same individual, Mr. J. Harvey Hill, had been taken. The only difference between the two counts was that one alleged that Mr. Hill's money had been taken "from the immediate presence of Charles Cope" and the other alleged that Mr. Hill's money had been taken "from the immediate presence of Dale Fountain . . . ." The evidence adduced at trial showed that the crimes for which appellant was being tried occurred at a restaurant which was owned by Mr. Hill. Mr. Cope, the manager of the restaurant, was forced at gunpoint to turn over money which was in his office. Mrs. Fountain, the restaurant's cashier, was forced at gunpoint to turn over money from the cash register. Citing *Creecy v. State,* 235 Ga. 542 (221 SE2d 17) (1975), appellant asserts that there was only one victim, Mr. Hill, and that the evidence will not support a conviction for two counts of armed robbery.

"Robbery is a crime against possession, and is not affected by concepts of ownership." *Creecy v. State,* supra at 544. In *Creecy* there was but one victim who, in a single transaction, was robbed of funds

belonging to his employer as well as his own funds. In the instant case, although only funds belonging to Mr. Hill were taken, they were taken from the possession of two of his employees. Thus, there were two victims. As we held in the appeal of appellant's co-indictee: "While during this robbery money belonging to the same individual was taken from two different individuals, the items were taken out of the physical presence of the separate victims, the same being under [each] victim's control and responsibility. The elements of the crime that [appellant] took the property of another from the person or immediate presence of another by the use of an offensive weapon were properly met. [Cits.]" *Wright v. State*, 166 Ga. App. 295, 297-298 (304 SE2d 105) (1983). Accordingly, there is no merit in a challenge based on the general grounds, and having been found guilty of both counts, appellant was properly sentenced for the commission of two armed robberies.

2. Appellant asserts that a police officer by the name of Larry Scarborough was erroneously allowed over objection to give hearsay testimony. The testimony was allowed under the general rubric that it was admissible as original evidence pursuant to OCGA § 24-3-2 as explanatory of Officer Scarborough's conduct.

"[T]he admissibility of evidence under OCGA § 24-3-2 is not a determination based only on its relevancy to explain conduct. There is a further requirement: The conduct to be explained must *itself* be a relevant issue in the case." (Emphasis in original.) *Noles v. State*, 172 Ga. App. 228, 229 (322 SE2d 910) (1984). "At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something." (Emphasis in original.) *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984). Under this standard, it does appear that certain portions of Officer Scarborough's testimony were erroneously admitted as being within the purview of OCGA § 24-3-2. "The question remains, however, whether the erroneous admission of the testimony was harmful." *Noles v. State*, supra at 230.

A portion of the officer's testimony concerned information related to him about the contents of certain documents or records. Insofar as the actual documents and records were themselves subsequently introduced into evidence, the officer's previous hearsay testimony as to their content was thereby rendered merely cumulative. See *Teague v. State*, supra at 537.

Officer Scarborough's testimony also included a recitation of information that had been related to him by a North Carolina officer. This information, for the most part, concerned an automobile which was registered to one of appellant's co-indictees and which had been abandoned in the restaurant parking lot, apparently by the perpetra-

tors of the armed robberies. Although this testimony by Officer Scarborough was hearsay, and in at least one instance was double hearsay, the record clearly demonstrates that it was not prejudicial to appellant. The issue in the instant case was whether appellant had taken part in the armed robberies in Georgia. The history of the automobile in North Carolina as described in Officer Scarborough's hearsay testimony did not implicate appellant in any criminal activity in that state or in the instant armed robberies. Appellant's connection with the automobile and hence to the crimes for which he was being tried resulted from the discovery in the abandoned automobile of a speeding ticket issued to appellant. Appellant's identity as a party to the armed robberies was established by direct evidence, consisting of eyewitness identification by several of the victims. Thus, although Officer Scarborough's hearsay testimony concerning the North Carolina officer's investigation into the history of the automobile was erroneously admitted, it was totally irrelevant to the ultimate issue of appellant's guilt. Moreover, the North Carolina officer was himself subsequently called as a rebuttal witness for the State and testified from personal knowledge. Under the circumstances, "we find it more than highly probable that the error did not contribute to the verdict. [Cit.]" *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982).

Appellant also asserts that Officer Scarborough was allowed to give hearsay testimony concerning a stolen gun discovered in the abandoned automobile. Our review of the transcript demonstrates that the officer's testimony about the gun was not hearsay. The officer testified only that *he* made inquiries concerning a stolen gun.

After careful review of the transcript, we find that the admission of hearsay testimony does not constitute harmful error requiring the reversal of appellant's convictions. See generally *Momon v. State*, supra; *Dover v. State*, 250 Ga. 209, 212 (5) (296 SE2d 710) (1982); *Teague v. State*, supra; *Noles v. State*, supra. Compare *Dixon v. State*, 173 Ga. App. 280 (325 SE2d 893) (1985).

3. Appellant contends that his motion for new trial should have been granted on the ground of newly discovered evidence, namely, a witness who would testify for the defense.

The six requirements, all of which must be met to secure a new trial on the basis of newly discovered evidence, are set forth in *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980). One of those requirements is a showing that the failure to discover the evidence prior to trial was not attributable to the want of due diligence. "The mere allegation that the evidence could not have been discovered by ordinary diligence is insufficient. [Cit.]" *Downs v. State*, 141 Ga. App. 173, 174 (233 SE2d 32) (1977). The affidavit of appellant's counsel submitted in support of the motion for new trial asserts the exercise of due diligence in attempting to locate the witness, "but that upon

inquiring of law enforcement officers . . . about the identity and location of the individual . . . , [he] was informed by Detective Larry Scarborough that no such individual existed in [the county] and that no such address as 902 Collins Street existed in [the county], and that [Officer Scarborough] had himself made efforts to locate that individual and had gone to that address and that it was either a vacant lot or there was no such 900 block of Collins Street [in the county]." Appellant thus contends that his motion for new trial should be granted because, despite the exercise of diligence, the prosecution "either intentionally or inadvertently kept [information concerning the witness] from [him] and his counsel. [Cit.]" *Banks v. State*, 235 Ga. 121, 125 (218 SE2d 851) (1975).

There is a significant difference between *Banks* and the instant case. Officer Scarborough testified at *appellant's trial* that his investigation revealed there was "[n]o such residence" as 902 Collins Street. The affidavit of the newly discovered witness submitted in support of appellant's motion for new trial states that 902 Collins Street is and has been his address. Assuming the correctness of the witness' affidavit and the inaccuracy of Officer Scarborough's testimony at trial, there is nothing in the record before us to indicate that the officer was lying, rather than merely mistaken, when he testified that the address did not exist. "Although a perjury conviction need no longer be obtained as a condition precedent [to the grant of a new trial], it is obvious that courts will not lightly set aside verdicts merely because of contradictions between witnesses and proposed witnesses." *Freeman v. State*, 130 Ga. App. 718, 721 (204 SE2d 445) (1974). It is true that the witness' affidavit states that he had "previously related [his] information to Detective Larry Scarborough and to [the] District Attorney. . . ." The witness did not, however, state that he had related it to them *before* appellant's trial, which had taken place some four months *before* his affidavit was given.

Likewise, appellant's assertions that the State deliberately concealed the identity of the witness are not supported by the witness' own affidavit. Prior and subsequent to appellant's trial, the witness had been incarcerated in the local jail under the last name of Howard rather than his real name of Pickett. Although it is appellant's contention that the witness was "assigned" this different last name by law enforcement officials, presumably to frustrate defense efforts to locate him, the witness' own affidavit merely recites that he "was in jail under the name of . . . Howard."

Thus, entirely unlike *Banks*, the record in the instant case does not support the conclusion that the newly discovered witness was deliberately or even inadvertently hidden from the defense by the prosecution prior to trial. Compare *Lee v. State*, 146 Ga. App. 189 (245 SE2d 878) (1978). Accordingly, appellant's reliance upon prose-

cutorial misconduct is not a valid excuse for his failure to exercise due diligence in the discovery of evidence prior to trial. Absent the unsupported allegations of prosecutorial misconduct, the affidavit of appellant's counsel is a mere insufficient allegation that such diligence was exercised. *Downs v. State*, supra.

Another requirement for the grant of a new trial is that the newly discovered evidence must be so material that it would probably produce a different result. The newly discovered witness in the instant case was not an eyewitness to the crime. Compare *Lee v. State*, supra. As demonstrated by his affidavit, his knowledge was limited to certain events which took place after the armed robberies. Although it could perhaps be characterized as circumstantially exculpatory, his testimony would certainly not constitute direct evidence of the impossibility of appellant's actual commission of the crimes. Newly discovered evidence will not authorize a new trial in a criminal case unless it "relates to facts which are . . . vitally material to the issue of the defendant's *guilt or innocence*." (Emphasis supplied.) *Taylor v. State*, 13 Ga. App. 689 (1) (79 SE 862) (1913). Considering that appellant was identified by eyewitnesses as being one of the perpetrators of the armed robberies, it is unlikely Mr. Pickett's testimony as to events occurring after the crimes would produce a different result in a retrial of appellant. For this additional reason, the trial court did not err in denying appellant's motion for new trial.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED MAY 30, 1985.

*J. Harvey Davis*, for appellant.

*David E. Perry, District Attorney, Leonard M. Geldon, Assistant District Attorney*, for appellee.