A95A2339. THE STATE v. BABEL et al.
A95A2340. THE STATE v. JOHNSON.
A95A2341. THE STATE v. BABEL.
A95A2342. THE STATE v. WILLIAMS.
(469 SE2d 203)

POPE, Presiding Judge.

Defendants A. J. Babel, Carol Babel, Bill Johnson, Elizabeth Babel, and Stacey Williams were indicted for participating in a pyramid club in violation of OCGA § 16-12-38. The trial court quashed the indictments on the ground that defendants had been selectively prosecuted in violation of their constitutional rights, and the State appealed. Concluding that defendants' indictments did not violate their constitutional rights even if we accept all the trial court's factual findings in their favor, we reverse.

Defendants participated in a pyramid club scheme which was widespread in Floyd and surrounding counties. Authorities estimate that hundreds and possibly thousands of people were involved in the scheme. Hampered by limited resources, however, government agents in Floyd County investigated only about 77 individuals, and eventually indicted only 26. At the hearing on the motions to quash, the State presented evidence that its decisions about indictments of particular participants were based primarily on the following factors: whether their participation was in Floyd County; whether they were at the top of the pyramid, and thus had received the largest sums of money; whether they had repaid the money they had illegally received; and whether the victims they had received money from (or

other members of the public) had called to file a complaint about them. Defendants countered with evidence that these criteria were inconsistently applied, and that the District Attorney ("DA") exhibited favoritism to friends involved in the scheme. Moreover, defendants asserted that they were really chosen for indictment because they had angered the DA by using his name to sell positions on the pyramid;[1] and the DA acknowledged his anger as well as his statement that he would prosecute those who used his name.

In her ruling from the bench immediately after the hearing, the trial court found that the DA had shown favoritism to some potential indictees by personally telling them how to repay the money, while others had to rely on confusing and unreliable media reports, and that there was "an appearance of impropriety and vindictiveness" on the part of the DA. Presumably, this last "finding" was based on the evidence of the DA's anger and his consideration of whether potential indictees had used his name for solicitation purposes in deciding whether to indict. The trial court then concluded that the prosecution of defendants was based on discriminatory standards and quashed the indictments.

1. Selectivity in enforcement of a criminal statute is not a constitutional violation (and thus not a reason to quash an indictment) unless the selection is "deliberately based upon an *unjustifiable* standard such as race, religion, or other arbitrary classification." (Emphasis supplied.) *Oyler v. Boles*, 368 U. S. 448 (82 SC 501, 7 LE2d 446) (1962). See also *State v. Causey*, 246 Ga. 735, 737 (2) (273 SE2d 6) (1980). As the Georgia Supreme Court stated in *Causey*, "the fact that, '(o)ther persons or classes of persons may have violated the law without being prosecuted therefor is no excuse for a violation by the defendant.' [Cit.]" Id. at 737. Thus, a criminal defendant seeking to avoid prosecution because others who violated the law are not being prosecuted bears a heavy burden: he must show "(1) that others *generally* are not prosecuted for the same misconduct, and (2) [that] the decision to prosecute [defendants] was based upon impermissible grounds such as race, religion, or exercise of constitutional rights. [Cit.]" (Emphasis in original.) *Gayton v. State*, 184 Ga. App. 387, 388 (361 SE2d 691) (1987). Actual, deliberate discrimination is required; an "appearance of impropriety" is clearly not enough. See *Snowden v. Hughes*, 321 U. S. 1, 8 (64 SC 397, 88 LE 497) (1944).

In this case, we accept the trial court's rejection of the State's explanations for its indictment decisions, as well as the court's im-

---

[1] For the most part, this apparently took the form of saying that the DA had examined the scheme and approved it as legal, but some defendants may have said that the DA was actually participating in the scheme. There is also evidence that some defendants used the DA's alleged approval of the scheme to justify their refusal to repay their victims.

plicit determination that the indictments targeted those potential indictees who used the DA's name in marketing the pyramid. See *Vansant v. State*, 264 Ga. 319 (1) (443 SE2d 474) (1994) (an appellate court will accept the trial court's findings of fact unless they are clearly erroneous). Even so, we do not agree with the trial court's ruling that the prosecutions violated defendants' rights, because defendants' use of the DA's name in promoting their illegal scheme distinguished their misconduct from the misconduct of other potential indictees, making their violation of the law more threatening to the public and therefore more culpable. Accordingly, if use of the DA's name was the standard by which indictment decisions were made, it was a justifiable and permissible one.[2] And this conclusion is not changed by the trial court's finding of favoritism, as "[t]he fact that some persons are wrongly singled out for special favor does not justify a charge of discrimination or selective prosecution." *Gayton*, 184 Ga. App. at 388.

Our holding is that the record in this case does not support selective prosecution because the prosecutor's actions were reasonable. Those with less reasonable grounds for initiating a prosecution should not look here for refuge, however. A prosecutor's unlawful actions are as abhorrent as the unlawful actions of any other government official, if not more so.

2. Some defendants also contend that the trial court's finding of "an appearance of . . . vindictiveness" alone mandates dismissal of the indictments. See *Lee v. State*, 177 Ga. App. 698, 700 (340 SE2d 658) (1986) (vindictive exercise of prosecutor's discretion violates due process). A prosecution is vindictive for purposes of due process analysis, however, when it is brought in retaliation for behavior on the part of a defendant which is legally protected. See, e.g., *Bordenkircher v. Hayes*, 434 U. S. 357 (98 SC 663, 54 LE2d 604) (1978). Here, defendants assert that their indictments were brought in retaliation for their use of the DA's name in marketing the pyramid — i.e., for conduct which not only is not legally protected, but which is also an integral part of the crime charged in the indictment. Under these circumstances, where the prosecutor is allegedly being vindictive because of behavior on the part of the defendant relating to the nature

---

[2] We note that selective prosecution analysis is essentially equal protection analysis. Thus, the level of scrutiny we use to determine whether the State's distinction is justifiable is based on the nature of the distinction. If the distinction is based on a "suspect" classification such as race, it is only justifiable if it is necessary to promote a compelling State interest; if it is based on gender or illegitimacy, it is justifiable if it bears a substantial relationship to an important State interest; and if, as here, it is not based on a protected classification, it is justifiable as long as it arguably bears a rational relationship to some legitimate State purpose. See Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure (2d ed. 1992), Vol. 3, pp. 7-8, 14-19, §§ 18.2-18.3.

of the charged offense itself, we hold that the prosecution cannot, as a matter of law, be deemed "vindictive." Clearly, the fact that a prosecutor is particularly horrified and angered by the details of a particular crime does not preclude his prosecution of the perpetrator of that crime. In the same way, the DA's anger with these defendants based on the particular way in which they pursued their illegal activity does not preclude his prosecution of them.

*Judgments reversed. Ruffin, J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED JANUARY 4, 1996 —
RECONSIDERATION DENIED FEBRUARY 9, 1996 —

*Stephen F. Lanier, District Attorney, Fred R. Simpson, Assistant District Attorney*, for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Mark M. J. Webb, Tambra P. Colston*, for the Babels and Johnson.

*James A. Robbins, Jr.*, for Williams.